Marcelo Di Mauro (SBN. 268501)
marcelodimaurolaw@gmail.com
LAW OFFICE OF MARCELO DI MAURO
2719 Wilshire Blvd., Ste. 200
Santa Monica, California 90403
T: (310) 876.2723

Attorneys for Plaintiff, A. Ganji

# UNITES STATED DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **A. Ganji**, an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>**Lyft, Inc.,**<br><br>Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff A. Ganji, individually and on behalf of all others similarly situated, complains and alleges as follows based on personal knowledge as to himself, on the investigation of his counsel, and on informaiton and belief as to all other matters. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth in this complaint after a reasonably opportunity for discovery.

### NATURE OF THE CASE

1. Plaintiff brings this action for legal and equitable remedies resulting from the illegal actions of Lyft, Inc. in negligently, knowingly, or willfully transmitting unsolicited,

-1-

autodialed SMS or MMS text messages, *en masse*, to Plaintiff's cellular device and the cellular devices of numerous other individuals across the county, in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

## PARTIES

2.  Plaintiff is, and all times mentioned herein was, an individual and a "person" as defined by 47 U.S.C. §153(39) and a citizen and resident of the State of California.

3.  Defendant Lyft, Inc. ("Lyft") is and at all times mentioned herein was, a "person" as defined by 47 U.S.C. §153(39). Lyft is a transportation company that provides rides to its customers throughout the United States via a mobile application. Defendant maintains its corporate headquarters in San Francisco, California.

## JURISDICTION AND VENUE

4.  This court has subject-matter jurisdiction over this putative class action lawsuit pursuant to 28 U.S.C. §1331 and 47 U.S.C. §227.

5.  Personal jurisdiction and venue are proper in this district because Lyft maintains its corporate headquarters in this district and the claims alleged herein arose in substantial part in this district.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

6.  To address consumer complaints regarding certain telemarketing practices, Congress enacted the TPCA, 47 U.S.C. §227, in 1991. The TPCA regulates, *inter alia*, the use of automated telephone equipment or "autodailers," to make any call, including sending a text message, to a wireless number absent an emergency or the "prior express consent" of the party called. 47 U.S.C. §227(b)(1)(A)(iii).

7.  According to findings by the Federal Communication Commission ("FCC"), which is vested with authority to issue regulations implementing the TPCA, such autodialed calls are prohibited because automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and receiving and addressing such calls can be

costly and inconvenient. The FCC also recognized that wireless customers are charged for such incoming calls whether they pay in advance or after the minutes are used.

8. One of the most prevalent bulk advertising methods employed by companies today involves the use of "Short Message Services" or "SMS," which is a system that allows for the transmission and receipt of short text messages to and from wireless telephones. Another similar service called "Multimedia Messaging Services" or "MMS" is based upon and similar to the SMS system, but also permits the transmission of photos and videos via text message.

9. SMS and MMS text messages are directed to a wireless device using the telephone number assigned to the device. When an SMS or MMS message is successfully transmitted, the recipient's wireless phone rings to alert him or her that a message has been received. Because wireless telephones are carried on their owner's person, SMS and MMS messages are received virtually anywhere in the world.

10. Unlike more conventional advertisements, SMS and MMS message advertisements can actually cost their recipients money because wireless phone users must pay their wireless service providers either for each text message they receive or incur a usage allocation deduction to their text messaging plan, regardless of whether the message is authorized.

11. Moreover, the transmission of an unsolicited SMS or MMS text message to a cellular device is distracting and aggravating to the recipient and intrudes upon the recipient's seclusion.

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

12. Plaintiff is, and at all times mentioned herein was, the subscriber of the cellular telephone number at (9**) ***-3350 (the "3350 Number"). The 3350 Number is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. §227(b)(1)(A)(iii).

13. Lyft is a transportation company that has experienced explosive growth since its founding in 2012. In just five years, its yearly revenue has increased to more than $1 billion. Lyft attributes the revenue growth in 2017 to "significantly reduce[d] sales and marketing expenses."[1]

14. In truth, however, in 2016, Lyft started shifting part of its marketing budget to its "Concierge" program to gain access to new customers. The "Concierge" program obtains cellphone numbers from the customers of third-party entities without the cellphone subscribers' consent. Lyft then contacts the cellphone subscribers via text message even though the persons never agreed to having their cellphone numbers shared with Lyft nor did they agree to receive any text messages from Lyft.

15. Lyft's "Concierge" program is especially nefarious because Lyft does not inform the persons that they are receiving the text message as part of Lyft's "Concierge" Program, nor does Lyft give the persons the ability to opt out of receiving text messages from Lyft.

16. Plaintiff is one such cellphone subscriber who received unsolicited text messages from Lyft through Lyft's "Concierge" program. On January 18, 2018, Lyft transmitted or caused to be transmitted, by itself or through an intermediary or intermediaries, the below four text messages to the 3350 Number without Plaintiff's express consent, written or otherwise.

---

[1] *Lyft's revenue growth is nearly triple Uber's*, CNET, *available at* https://www.cnet.com/news/lyfts-revenue-growth-is-nearly-triple-ubers-at-168-percent-in-fourth-quarter-2017/ (last accessed October 16, 2018).

17. These text messages were unwanted and unsolicited because Plaintiff has (1) never signed up to use Lyft nor given Lyft permission to send him text messages; (2) never been to Future Ford, Lincoln & Hyundai of Concord much less requested a ride from them; (3) never given Ford permission to send him text messages; and (4) never permitted Ford to allow third parties like Lyft to send him text messages.

18. The complained of text messages constituted calls that were clearly not made for emergency purposes as defined by 47 U.S.C. §227(b)(1)(A)(i).

19. Because Plaintiff is alerted by his cellular device, by auditory or visual means, whenever he receives a text message, the unsolicited text messages that Lyft transmitted to Plaintiff's cellular device invaded Plaintiff's privacy and intruded upon Plaintiff's seclusion upon receipt.

20. Plaintiff was not able to request that the texts end or to voice a complaint to a real person because the text messages contained no method of opting-out of such messages.

21. All telephone contact by Lyft and/or its affiliates, subsidiaries, or agents to Plaintiff occurred via an "automated telephone dialing system" as defined by 47 U.S.C. § 227(b)(1)(A).

22. Specifically, Lyft utilized an "automated telephone dialing system" because the text messages to the 3350 Number and to the other Class members' cellular devices were sent from a telephone number used to message *en masse*; because Lyft's automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous calls or texts simultaneously (all without human intervention); and because the hardware and software used by Lyft to send such messages have the capacity to store, produce, and dial random or sequential numbers, or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion and without human intervention.

23. And indeed, Lyft actually transmitted the text messages at issue in this case to Plaintiff and all other putative class members in an automated fashion and without human

intervention, with hardware and software that stores, produces and dials random or sequential numbers.

24. Neither Plaintiff nor the other members of the Class provided their "prior express written consent" or any other form of consent to Defendant or any affiliate, subsidiary, or agent of Lyft, to transmit SMS or MMS text messages to the 3350 Number or to any other numbers by means of an "automatic telephone dialing system" within the meaning of 47 U.S.C. §227(b)(1)(A).

## CLASS ACTION ALLEGATIONS

25. <u>Class Definition</u>.  Plaintiff brings this civil class action on behalf of himself individually and on behalf of all other similarly situated persons as a class action pursuant to the Federal Rule of Civil Procedure 23.  The "Class" which Plaintiff seeks to represent is comprised of and defined as follows:

> All persons within the United States who between the inception of Lyft's "Concierge" program on or around January 12, 2016, to the present, received one or more SMS or MMS text message(s) from Lyft, Inc., or an affiliate, subsidiary, or agent of Lyft, Inc.

26. Lyft and its employees and agents are excluded from the Class.

27. Plaintiff reserves the right to modify the definition of the Class (or add one or more subclasses) after further discovery.

28. Plaintiff and all Class members have been impacted and harmed by the acts of Lyft and/or its subsidiaries, affiliates and/or agents.

29. This Class Action Complaint seeks money damages and injunctive relief.

30. This action may properly be brought and maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b).  This class action satisfies the numerosity, typicality, adequacy, commonality, predominance and superiority requirements.

31. Upon application by Plaintiff's counsel for certification of the Class, the Court may also be requested to utilize and certify subclasses in the interests of ascertainability, manageability, justice and/or judicial economy.

32. <u>Numerosity</u>. The number of persons within the Class is substantial, believed to amount to tens of thousands of persons dispersed throughout the United States. It is, therefore, impractical to join each member of the Class as a named Plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasibly means of determining and adjudicating the merits of this litigation.

33. <u>Typicality</u>: Plaintiff received at least one text message through the use of an automatic telephone dialing system, without providing prior express written consent to the Defendant within the meaning of the TCPA. Consequently, the claims of Plaintiff are typical of the claims of the members of the Class, and Plaintiff's interests are consistent with and not antagonistic to those of the other Class members he seeks to present. Plaintiff and all members of the Class have been impacted by, and face continuing harm arising out of, Defendants' violations or misconduct as alleged herein.

34. <u>Adequacy</u>: As Class representative, Plaintiff has no interests adverse to, or which conflict with, the interests of the absent members of the Class, and is able to fairly and adequately represent and protect the interests of such a Class. Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Class and will vigorously pursue those claims. If necessary, Plaintiff may seek leave to amend this Class Action Complaint to add additional Class representatives or assert additional claims.

35. <u>Competency of Class Counsel</u>: Plaintiff has retained and is represented by experienced, qualified and competent counsel committed to prosecuting this class action. These counsel are experienced in handling complex class action claims. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Class.

36. <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class

members is impracticable. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. Class wide relief is essential to compel compliance with the TCPA. The interest of Class members in individually controlling the prosecution of separate claims is small because the statutory damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the Class members, by definition, did not provide the prior express written consent required under the statute to authorize calls to their cellular telephones.

37. Additionally, the prosecution of separate actions by individual Class members may create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the Class not parties to such adjudications or that would substantially impair or impede the ability of such nonparty Class members to protect their interests. The prosecution of individual actions by Class members could establish inconsistent results and result in establishing incompatible standards of conduct for Defendant.

38. Defendant and/or its affiliates, subsidiaries, or agents have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate. Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

39. <u>Commonality and Predomination</u>. There are well defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individuals of the Class. These common legal and factual questions, which do not vary from Class member to Class Member and which may be determined without reference to the individual circumstances of any class member include, but are not limited to, the following:

(a) Whether Defendant and/or its affiliates, subsidiaries, or agents made non-emergency calls to Plaintiff and Class members' cellular phones using an automatic telephone dialing system;

(b) Whether Defendant and/or its affiliates, subsidiaries, or agents can meet their burden to show Defendant obtained prior express written consent (as defined by 47 C.F.R. 64.1200(f)(8)) to send the text messages complaints of complained of, assuming such an affirmative defense is raised;

(c) Whether the complained of conduct was knowing and/or willful;

(d) Whether Defendant is liable for damages, and the amount of such damages; and

(e) Whether Defendant and/or its affiliates, subsidiaries, or agents should be enjoined from engaging in such conduct in the future.

## CLAIMS FOR RELIEF
### FIRST CAUSE OF ACTION
### NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227

40. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

41. The foregoing acts and omissions constitute negligent violations of the TCPA, by Lyft, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

42. As a result of the alleged negligent violation of 47 U.S.C. § 227, Plaintiff and

each member of the Class is entitled to an award of $500.00 in statutory damages for each and every SMS message transmitted in violation of the statute, pursuant to 47 U.S.C. §227(b)(3).

43. Plaintiff and all Class members are also entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

44. Plaintiff and Class members also seek an award of attorneys' fees and costs.

## SECOND CAUSE OF ACTION

## KNOWING AND/OR WILLFUL VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227

45. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

46. The foregoing acts and omissions constitute negligent violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

47. As a result of the alleged knowing and/or willful violations of 47 U.S.C. § 227, Plaintiff and each member of the Class is entitled to treble damages of up to $1,500.00 for each and every SMS message transmitted in violation of the statute, pursuant to 47 U.S.C. §227(b)(3).

48. Plaintiff and all Class members are also entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

49. Plaintiff and Class members also seek an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for relief and judgment in their favor as follows:

A. As a result of the alleged negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member $500.00 in statutory damages, for each and every call/message that violated the TPCA;

B. As a result of the alleged willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member treble damages, as provided by statute, up to $1,500.00 for each and every text message that violated the TCPA;

C. Injunctive relief prohibiting such violation of the TCPA in the future;

D. An award of attorneys' fees and costs to counsel to Plaintiff and the Class;

E. An Order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is the proper representatives of the Class, and appointing the law firm representing Plaintiff as counsel for the Class; and

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and the Class, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

\*\*\*

Respectfully submitted,

DATED: October 16, 2018

s/ Marcelo Di Mauro
Marcelo Di Mauro
LAW OFFICE OF MARCELO DI MAURO

*Counsel for Plaintiff and the Putative Class*